UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **DOREL JUVENILE GROUP, INC.,** | ) | |
| | ) | **C.A. No.:** MC 06-91ML |
| **Plaintiff,** | ) | |
| | ) | **(In re: Subpoena issued to Summer Infant Inc. in C.A. No. 1:06-CV-1295-DFH-TAB, now pending in U.S. District Court for the Southern District of Indiana)** |
| **v.** | ) | |
| | ) | |
| **SUMMER INFANT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM SUMMER INFANT, INC.**

Plaintiff Dorel Juvenile Group ("Dorel"), by its attorneys, pursuant to Federal Rule of Civil Procedure 37 and the Local Rules of this Court, hereby moves the Court for an order compelling Summer Infant, Inc. ("Summer Infant") to immediately produce certain non-privileged documents responsive to the subpoena served upon it on September 6, 2006 so that Dorel can prepare for a preliminary injunction hearing scheduled for October 16, 2006. In support of this motion, Dorel states as follows:

## I. BACKGROUND FACTS

### A. The Parties and Background Facts

The action underlying the subject subpoena, filed August 30, 2006, is an action for injunctive relief and money damages pending in the United States District Court, Southern District of Indiana (the "Indiana Court") brought by Dorel against its former Director of Marketing Communications, Defendant Lois DiMartinis ("DiMartinis"). Dorel's Complaint seeks to enjoin DiMartinis from using or disclosing Dorel's confidential information and trade secrets and performing services at her new employer, Summer Infant--a direct competitor of

Dorel--in any capacity that would cause her to inevitably disclose such confidential information and trade secrets.[1] Dorel also claims that DiMartinis accessed Dorel's computer network for an unauthorized purpose, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030.

Dorel is engaged in the business of designing, developing, manufacturing, and distributing various categories of juvenile products, including but not limited to, car seats, travel systems, home safety products, gates, bedrails, infant health products, strollers, boosters, potties, bath tubs, monitors, swings, play yards and high chairs. Summer Infant also sells juvenile products, in most, if not all, of these categories. Dorel and Summer Infant compete not just to sell products to the same potential customers, but also to secure licensing arrangements with many of the same potential licensors and for "shelf space" in many of the same retail stores. Summer Infant currently has a smaller share of the juvenile product market than Dorel, and it has struggled to compete aggressively with Dorel to gain market share through any means necessary. It has hired existing Dorel employees and, it is believed, copied confidential product designs and other marketing initiatives in order to compete unfairly with Dorel, including but not limited to, designs for infant bath, health and safety products.

DiMartinis was employed as Dorel's Director of Marketing Communications, and before that, Vice President of Marketing, until she abruptly resigned on August 7, 2006. DiMartinis was one of the most senior and highly compensated executives at Dorel, and, as a result of her position, gained knowledge of much of Dorel's highly sensitive information about its new product designs as well as its confidential marketing, licensing, advertising, and distribution initiatives. Such information is highly valuable to competitors like Summer Infant because Dorel is a market leader in the juvenile products industry, and knowledge of Dorel's future product

[1] The facts are set forth in detail in Dorel's Complaint, a copy of which is attached hereto as Exhibit A.

designs and business and marketing plans would allow the competition to develop alternative strategies aimed directly at countering those current initiatives.

On August 7, 2006, DiMartinis (who had been on maternity leave) arrived at Dorel's offices, claiming that she was excited about returning to work full time soon and that she needed to pick up some materials from her office. Believing her, Dorel allowed her access to its offices and confidential information. Hours later, DiMartinis resigned and announced she had accepted an offer to be the new Vice President of Marketing for Summer Infant. DiMartinis is the fifth Dorel employee hired by Summer Infant since January 2005. Prior to her sudden departure, DiMartinis obtained highly sensitive documents, including Dorel's confidential and trade secret information, through her access to Dorel's secure computer network, and transferred them to her personal account at home.

### B. The Lawsuit and Subpoena to Summer Infant

This action seeks to prevent DiMartinis' inevitable disclosure of Dorel's confidential and trade secret information in her new, nearly identical role at Summer Infant. Pertinent to these claims, Dorel has alleged that Summer Infant has hired other Dorel employees, and its hiring of DiMartinis is part of a pattern of activity designed to enable Summer Infant to gain access to Dorel's confidential information. In addition, it appears that Summer Infant already has copied confidential product designs from Dorel, including designs for infant bath, health and safety products. (Ex. A, Compl. at ¶ 26).

Simultaneous with the filing of its Complaint, Dorel filed Emergency Motions for Expedited Discovery and to Preserve Evidence. In its Motion for Expedited Discovery, Dorel sought to immediately commence discovery with respect to DiMartinis and Summer Infant. The Indiana Court granted Dorel's motions on August 31, 2006, allowing Dorel to issue written

discovery to DiMartinis and non-parties and requiring responses within 10 calendar days. (A copy of the Court's Order on Expedited Discovery is attached hereto as Exhibit B). On September 6, 2006, Dorel served a subpoena and document rider on Summer Infant ("Subpoena"). (A copy of the Subpoena and affidavit of service is attached hereto as Exhibit C). In the Subpoena, Dorel seeks documents pertinent to Summer Infant's employment of DiMartinis and other former Dorel employees, including, among other things, Summer Infant's recruitment and hiring of, and communications with, DiMartinis; the terms of DiMartinis' employment and her job duties and responsibilities; information regarding Dorel's products in Summer Infant's possession; communications between Summer Infant and the other former Dorel employees Summer Infant hired and documents reflecting their job duties and responsibilities at Summer Infant; and design information relating to two Summer Infant products Dorel believes Summer Infant copied in whole or in part from Dorel's confidential research and design information. (*See* Ex. C).

On September 22, 2006, the parties had a scheduling conference with Indiana Court Judge David F. Hamilton. Judge Hamilton set a hearing on the preliminary injunction for October 16, 2006, and made clear that, given the short time for discovery, he would consider the parties' conduct in discovery in weighing their overall credibility in the lawsuit. Aware of the Subpoena, Judge Hamilton also stated that since Summer Infant seeks to employ DiMartinis, he expected it to be "reasonable and very prompt" in responding to discovery. Judge Hamilton also indicated he would be willing to preside over any discovery disputes pertaining to third party discovery, but to date Summer Infant has refused to consent to Judge Hamilton handling discovery disputes related to the Subpoena.

### C. Dorel's Reasonable Attempts to Resolve the Discovery Dispute

On September 18, 2006, Summer Infant responded to the Subpoena with identical blanket objections to each of the document requests. (A copy of the September 18, 2006 Letter from Summer Infant's lawyer setting forth the objections is attached hereto as Exhibit D). Although it claimed it would make documents available, Summer Infant did not produce a single document in response to the subpoena.

As set forth below, following the initial blanket refusal to produce, Dorel's counsel has conferred with Summer Infant's lawyer, Christopher O'Connor, on several occasions but Summer Infant's basic position has not changed. It continues to refuse to produce any documents other than those relating to the hiring of DiMartinis (and any of Dorel's confidential information she might have given Summer Infant, as to which it claims it has none), and it has failed over the course of the last week to turn over any documents.

On September 22, 2006, Dorel's counsel conferred by telephone with Mr. O'Connor, and requested that Summer Infant be more specific as to its reasons for refusing to produce documents, and indicate with specificity what documents, if any, Summer Infant was willing to produce and when. Mr. O'Connor agreed to clarify Summer Infant's position and the parties scheduled a follow-up telephone conference for Monday, September 25, 2006. He also agreed to produce at least some responsive documents, which he was purportedly still reviewing, on September 26. However, the same day Mr. O'Connor sent Dorel's counsel a letter demonstrating little, if any, change in his position, and confirming Summer Infant's refusal to produce the bulk of the information requested by Dorel. (A copy of the September 22, 2006 Letter is attached hereto as Exhibit E).

Mr. O'Connor was unavailable to meet on September 25, so the parties conferred by telephone on September 26. Dorel's counsel explained in detail the reasons for its requests, and asked for Summer Infant's agreement to go before Judge Hamilton to resolve any disputes (Summer Infant refuses). In addition, Dorel's counsel provided Mr. O'Connor with an Agreed Protective Order entered into by Dorel and DiMartinis, providing for the designation of documents as "Confidential" and "Attorneys' Eyes Only" in response to Summer Infant's purported concerns about producing proprietary information. (A copy of the Agreed Protective Order, the protections of which are available to non-parties, is attached hereto as Exhibit F).

On September 27, Mr. O'Connor sent Dorel's counsel a letter reaffirming Summer Infant's position that it will only produce a narrow set of documents related to Summer Infant's hiring of DiMartinis (none of which have yet to be produced), and indicating that Dorel should "seek appropriate relief in Rhode Island." (A copy of the September 27, 2006 Letter is attached hereto as Exhibit G). To date, Summer Infant has not produced any documents in response to the September 6 Subpoena, despite the Indiana Court's order that responses were due within 10 calendar days and counsel's repeated representations that Summer Infant will produce some documents.

## II. SUMMER INFANT SHOULD PRODUCE ALL DOCUMENTS REQUESTED

The following describes requested information upon which the parties have reached impasse and for which Dorel seeks this Court's intervention:

### A. Request Nos. 1 and 2

Pertinent to its claims that DiMartinis will inevitably use and disclose Dorel's confidential information in her work at Summer Infant, Dorel requested all information in Summer Infant's possession relating to Dorel, including Dorel's marketing, sales, advertising,

and product promotions, product development information, licensing arrangements, financial information and crisis management information. (Ex. C, Request No. 1). It also requested documents reflecting communications between DiMartinis and Summer Infant regarding these and other categories of Dorel's business information. (*Id.*, Request No. 2). Summer Infant agreed to produce only a subset of the information sought by these requests, limited to "proprietary information which may have been disclosed by Ms. DiMartinis to Summer Infant," then claimed that it did not have any such information in its possession. (Ex. G).

The reason Dorel needs all of the requested information - not just the subset Summer Infant is willing to provide - should be self-evident. It relates directly to the issue of whether Martinis is reasonably likely to use Dorel's information at Summer Infant. DiMartinis had access to virtually all of Dorel's marketing information. The likelihood that she will use any of that information while at Summer Infant depends, in part, on the extent to which Summer Infant even considers Dorel's products or promotions when it develops its own marketing and product development plans. To the extent it consciously considers that information, there is an increased motive and intent to use the Dorel information DiMartinis possesses. If it never considers Dorel, there is arguably less motive and intent to use it. But in order to explore that issue, Summer Infant's information about Dorel must be produced. *See, e.g.*, *Cranston Print Workers v. California Dimensions, Inc.*, No. 90 CIV 655, 1990 WL 33580 at *3, n. 2 (S. D. N. Y. 1990) (in copyright infringement action where the plaintiff claimed that the defendant copied its design, evidence indicating that defendant had copied information on other designs provided circumstantial evidence of intent or plan to copy in the instant case and supported award of preliminary injunction); *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox*

*Masonry and Expert Restorations*, 140 F.3d 661, 667 (7th Cir. 1998) (evidence of attorney's tactics in previous representation relevant to show intent of lawyer in current instance).

Moreover, Summer Infant's lawyer has made clear that DiMartinis provided Summer Infant with a copy of her Confidentiality Agreement with Dorel. (*See* Ex. E). Any communications between DiMartinis and Summer Infant regarding this document also would be responsive to Request No. 2 and are highly relevant to Dorel's claims that DiMartinis will inevitably disclose Dorel's confidential information, but Summer Infant has inexplicably refused to produce this information.

Summer Infant has not articulated a reason why it will not produce the above information other than blanket objections about relevancy and producing proprietary information. However, as noted, these documents certainly meet the liberal standards of Federal Rules of Civil Procedure Rule 26, and any concern that Summer Infant may have about the requested materials being competitively sensitive is alleviated by the parties' Agreed Protective Order. That Order, a copy of which is attached hereto, provides for the designation of certain highly sensitive material as "Attorneys' Eyes Only." (Ex. F at ¶5). No one from Dorel will ever see or hear about any information properly classified as such. Summer Infant can avail itself of the protections of the Agreed Protective Order if it chooses to do so.

**B. <u>Request No. 3</u>**

Dorel requested all documents pertinent to the recruitment and hiring process as it relates to DiMartinis. (Ex. C, Request No. 3). In response to this request, Summer Infant has stated that it will agree to produce "all relevant information relating to the hiring of Lois DiMartinis", and that this only includes the following: a newspaper advertisement for the position, the offer letter sent to DiMartinis, and (possibly) certain e-mails Mr. O'Connor claimed he was reviewing

(although he has not yet produced any of these documents). Mr. O'Connor also stated that his client was checking for any "handwritten notes of meetings and calendar entries relating to the hiring of Ms. DiMartinis" but that he believed such notes and entries "did not exist." (Ex. G). Dorel has not received any of these materials.

The fact is that *all* information pertaining to DiMartinis' recruitment and hiring is relevant to Dorel's claims against DiMartinis and responsive to Dorel's requests. Accordingly, Dorel requests that this Court order Summer Infant to immediately produce all documents responsive to its Request Number 3, without any qualification.

**C. Request No. 4**

Dorel also asked for any other documents reflecting communications between DiMartinis and Summer Infant. (Ex. C, Request No. 4). Because Mr. O'Connor stated that he "does not know what information is sought" through this request (Ex. E). Dorel's counsel informed Mr. O'Connor that DiMartinis' interrogatory responses stated that she attended a "strategy session" on August 18, 2006 at Summer Infant, and thus Request No. 4 would encompass, among other communications, all documents pertinent to this "strategy session," including but not limited to any communications, correspondence, copies of the presentation itself and any other documents provided to the attendees, including DiMartinis. (*See* DiMartinis' Answers to First Set of Interrogatories, attached hereto as Ex. H at No. 1).

Dorel requires this information to determine the extent to which any Dorel information might have been shared at this presentation, or at similar meetings. For instance, if the presentation covered new product designs, DiMartinis' presence would create an opportunity to share information about Dorel's proposed strategies concerning comparable products. If it covered marketing strategies about the products, DiMartinis' presence would create an

opportunity to share information regarding marketing strategies for comparable products. Dorel requests that this Court order Summer Infant to produce all responsive documents, including the documents pertaining to the "strategy session" to Dorel. Again, any concerns regarding the proprietary nature of such information can be alleviated through Summer Infant's use of the protections of the Agreed Protective Order.

**D. Request No. 9**

Dorel also requested any and all documents relating to the position DiMartinis holds at Summer Infant, including those reflecting her job title, responsibilities and duties. (Ex. C, Request No. 9). This information is very important because the greater the extent to which DiMartinis' old duties overlap with her new duties, the more inevitable it is that she will use Dorel's confidential information in the performance of her new duties. Summer Infant claims that there is no formal job description. (Ex. G.) But that does not mean that there are no documents that reflect the new position's duties. Companies rarely take recruitment and hiring decisions - especially for high-level vice president positions such as this one - lightly. It simply is incredible that Summer Infant would create a new Vice President position without creating a single email, note, memo, or other internal document discussing what this new position would entail and/or why it was being created. It is also hard to believe that aside from the newspaper advertisement, there are no notes or other documents reflecting communications between DiMartinis and Summer Infant, particularly since DiMartinis indicated in her Answers to Dorel's First Set of Interrogatories that she had numerous contacts with the principals of Summer Infant regarding the position between April and August 2006. (Ex. H, No. 1)

**E. Request Nos. 5, 6, 7, 8, 10, and 13**

Dorel has requested information regarding four other former Dorel employees who voluntarily left Dorel to join Summer Infant, including communications between Summer Infant and the named individuals regarding their (or DiMartinis') employment at Summer Infant (Ex. C, Request Nos. 5-8) and documents that relate to their positions, job duties and responsibilities at Summer Infant (*Id.*, Request No. 10). Additionally, Dorel has requested information regarding Summer Infant's contacts with other Dorel employees regarding employment at Summer Infant. (*Id.*, Request No. 13). Dorel informed Summer Infant's attorney that it would agree to limit this request to documents created from January 1, 2005 to the present. However, Summer Infant has made a blanket refusal to produce any of the requested information on the basis of relevancy. (Ex. G).

Summer Infant's argument is without merit. Evidence of Summer Infant's hiring and recruitment of other Dorel employees since January 1, 2005 and communications with such employees regarding DiMartinis goes directly to the company's motive in recruiting DiMartinis, and its intent to put her in a position where she would rely on her vast knowledge of Dorel's marketing and distribution plans for the upcoming year in charting Summer Infant's course. If Summer Infant has obtained confidential information from other former employees, this demonstrates Summer Infant's motive and intent to compete unfairly and its willingness to have DiMartinis use and disclose what she knows about Dorel's confidential business plans. *See, e.g., PepsiCo v. Redmond*, 54 F. 3d 1262, 1271 (7th Cir. 1995) (affirming issuance of preliminary injunction enjoining manufacturer's former high-level manager from working for competitor on an inevitable disclosure theory, noting generally that competitor "seemed to express an unnatural

interest in hiring [the manufacturer's] employees"). This information goes to the heart of Dorel's claims against DiMartinis, and should be produced.

F. **Request Nos. 11 and 12**

Finally, Dorel has requested information regarding Summer Infant's design information for two product areas in which Dorel contends recent innovations and developments were achieved through unlawful access to Dorel's confidential design information—Summer Infant's juvenile aspirator and bath products. (Ex. C, Request Nos. 11 and 12) Summer Infant has refused to produce any of its information on the grounds of its concerns that it is confidential and proprietary information and unrelated to the hiring of DiMartinis. (Ex. E).

Once again, Summer Infant's concerns about "public access" or "Dorel's access" to this confidential and proprietary information are alleviated by the parties' Agreed Protective Order. Moreover, as with earlier requests, Summer Infant's blanket "relevancy" objection is unfounded. Dorel is highly concerned about the timing and content of certain innovations to these products by Summer Infant which coincided with certain of Dorel's employees commencing work at Summer Infant. The extent of Summer Infant's previous attempts to use Dorel's confidential information obtained from former Dorel employees helps establish Summer Infant's motive and intent to use similar information that DiMartinis possesses. If, as Dorel believes, Summer Infant's designs and innovations were based in part or in whole on Dorel's research and design information, there is an increased threat that DiMartinis will, in fact, disclose Dorel's plans in carrying out her duties on behalf of Summer Infant. That increased threat is directly relevant to the need for injunctive relief.

WHEREFORE, for the reasons stated herein, Dorel respectfully requests that the Court: a) enter an Order compelling Summer Infant to produce all non-privileged documents in its

possession responsive to the Subpoena; (b) award Dorel the costs and attorneys' fees incurred in bringing this matter before the Court; and (c) grant such other relief as the Court deems just and proper.

**FRCP Rule 37 Certification**

I hereby certify that Nora Kersten Walsh, Esq., of Schiff Hardin, LLP, one of the attorneys for Dorel in the underlying litigation and the attorney who issued the subject Subpoena conferred in good faith with counsel for Summer Infant, Inc. in an effort to secure the requested information without court action

**Request for Oral Argument**

Dorel hereby requests an oral argument on the instant Motion and estimates that thirty (30) minutes will be required for said argument.

Respectfully submitted,

**DOREL JUVENILE GROUP, Inc.,**

By one of its attorneys,

Mary Cavanagh Dunn (JVC)

Mary Cavanagh Dunn, #6712
BLISH & CAVANAGH
30 Exchange Terrace
Providence, Rhode Island 02903
(401) 831-8900 (telephone)
(401) 751-7542 (facsimile)
mcd@blishcavlaw.com

Dated: September 29, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I had served a copy of the foregoing **Plaintiff's Emergency Motion to Compel Production of Documents From Summer Infant, Inc.** upon the following by Hand Delivery or First Class Mail:

Christopher J. O'Connor, Esq.
Poore & Rosenbaum, LLP
30 Exchange Terrace
Providence, R.I. 02903 (by Hand Delivery)

James G. Richmond
Abigail Clapp
GREENBURG TRAURIG, LLP
77 West Wacker Dr.
Ste. 2500
Chicago, IL 60601

J. Lee McNeely
MCNEELY, STEPHENSON, THOPY & HARROLD
30 East Washington St.
Ste. 400
Shelbyville, IN 46176

Laurie J. Hurtt
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Mary Cavanagh Dunn, Esq.