IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DOREL JUVENILE GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-1295-DFH-TAB |
| | ) | |
| LOIS DIMARTINIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT LOIS DIMARTINIS'
ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Lois DiMartinis, through her undersigned counsel of record, for her *Answers to Plaintiff's First Set of Interrogatories*, states as follows.

GENERAL OBJECTIONS

Given the Order for Expedited Discovery entered *ex-parte* in this case, the following responses represent Defendant's best efforts to respond to Plaintiff's Interrogatories, and are based upon information Defendant currently possesses. Defendant specifically reserves the right to supplement the following responses as discovery progresses.

Defendant objects to Plaintiff's "Definitions" and "Instructions" to the extent they purport to impose upon Defendant any obligations beyond those imposed by Fed. R. Civ. P. 33 or any Order or Local Rule of the Court.

INTERROGATORIES

1. Identify each and every person affiliated with Summer Infant with whom you have had contact or communications since January 1, 2006 and for each person identify when the contact or communications occurred and describe the nature of the contact or communications.

ANSWER:

ANSWER: Defendant objects to Interrogatory No. 1 on the ground that it is overly broad, harassing, not limited to the subject matter of Plaintiff's Complaint and/or Motion for Preliminary Injunction, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Interrogatory No. 1 to the extent it seeks communications protected by the attorney-client privilege. Subject to and without waiving these objections, Defendant answers as follows.

On or about April 9, 2006, I noticed an advertisement for the position of "Vice President of Marketing" for Summer Infant in the Providence Journal. This is the first I became aware that such a position existed at Summer Infant. Approximately one week later, I contacted Steve Gibree by telephone regarding the advertisement. I knew Mr. Gibree from our work together at Safety 1st and Dorel. Mr. Gibree briefly explained the advertisement and asked whether I might be interested in hearing about the position. I responded that I was not interested, and informed Mr. Gibree that I was not even sure when I might be able to return to work at Dorel due to my son's health problems.

Between April and June 2006, I believe I may have had other telephone conversations with Mr. Gibree. These conversations were unrelated to the advertised position.

I did not return to work at Dorel on my scheduled return date of June 5, 2006 due to my infant son's health problems. Thereafter, in early June 2006, I was formally taken off the Dorel payroll. Approximately five weeks later, on or about July 14, 2006, I met with Mr. Gibree at a local restaurant to discuss the advertised position. Mr. Gibree described the position, and also generally described Summer Infant's financial stability as a company. We discussed whether the position would be suited to flexible hours, as this was of primary concern to me. I informed Mr. Gibree at the conclusion of our meeting that I needed to consider my needs in light of the information he had

provided, and in light of my child's health problems. No offers or commitments were made at this time, and I advised Mr. Gibree that I would contact him if at some point I became interested in further information about the position.

On or about July 31, 2006 I attended a meeting at a local restaurant with Steve Gibree and Jason Macari to discuss the advertised position. After I communicated that my two chief concerns at the time were (1) stability of the company and (2) flexibility of the position, Mr. Gibree and Mr. Macari asked me to put together a proposal regarding what I would need to make the position work. I did so the next day. I sent Mr. Gibree my proposal via email. Mr. Gibree called me to confirm his receipt of my email, and informed me that he and Mr. Macari would discuss my proposal and keep me informed.

On or about August 4, 2006, Mr. Gibree advised me that upon Mr. Macari's return from travel, Summer Infant was prepared to create an offer for me based upon my proposal. On or about August 4, 2006, I had a meeting with Mr. Gibree at which I provided Mr. Gibree with a copy of my Dorel Confidentiality Agreement.

On or about August 7, 2006, I received an offer of employment from Summer Infant via email. I responded to the email. Through a series of email exchanges, Mr. Gibree and I discussed the fact that my address was inaccurate in the offer email. Mr. Gibree responded that the correction to my address would be remedied on my first day of work. I never received a final employment offer letter or offer with a corrected address.

On or about August 14, 2006 Mr. Gibree invited me to attend a strategy session on August 18, 2006 at Summer Infant prior to my September 5, 2006 proposed start date. I attended the

meeting on August 18, 2006. At the meeting, Summer Infant shared with me the status, and showed me concept renderings, of its current large furniture plans. After the meeting, Georgi Morin emailed me some Summer Infant proprietary development information. I shared no information with Summer Infant, and was merely being given a background education. At some point after the meeting I emailed Cindy Barlow and Georgi Morin. I also forwarded the documents that Georgi had emailed me to my own Summer Infant account, to be utilized by me during my first week of work at Summer Infant.

On September 5, 2006 I reported to Summer Infant for my first day of work. Jason Macari advised me that I was not report to work until the pending lawsuit was rectified, and I returned home.

I have had limited communications with Jason Macari and Steve Gibree since September 5, 2006 regarding various issues unrelated to Dorel, such as the health of my son.

2. Identify any and all places where you have placed, transferred, sent or stored any information obtained from Dorel, including but not limited to any all computer hard drives or other data storage devices and all residences or facilities.

ANSWER: Defendant objects to Interrogatory No. 2 on the ground that it is not limited to Confidential Information or the matters at issue in Plaintiff's Complaint and/or Motion for Preliminary Injunction, and is therefore overly broad, harassing, vague, seeks irrelevant information, and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to Interrogatory No. 2 on the ground that read literally, "facilities" includes Dorel facilities, where Dorel's Confidential Information has necessarily been "placed" and "stored" by the Defendant.

Defendant further objects to Interrogatory No. 2 on the ground that it is not limited in time.

Consistent with these objections, Defendant will limit her answer to the Confidential Information that is the subject of Plaintiff's Complaint, and to "residences and facilities" other than those within the possession and control of Dorel.

Subject to these limitations, and without waiving the foregoing objections, Defendant answers as follows.

During my nine-year career at Dorel and Safety 1st and in order to perform my job duties, I placed, transferred, sent or stored Confidential Information to:

a. My home computer

b. Various hotels to which I was traveling on business

c. Various Dorel Exclusive Sales Representatives for the purpose of supporting Dorel's marketing and selling initiatives with retailers

d. Duffy & Shanley, Dorel's advertising and public relations firm

e. Maison Brison, Dorel Industries' Investor Relations Firm

f. Licensors such as Eddie Bauer and Disney

g. NACHRI

During my nine-year career at Dorel and Safety 1st I never placed, transferred, sent or stored Confidential Information for any purpose other than in the performance of my job duties.

3. Identify any and all places, other than any Dorel facility, where you know or have reason to believe that any of Dorel's Confidential Information was sent or transferred by any current or former Dorel employee, including you but not limited to you, or where any of Dorel's confidential Information is currently being maintained or stored in any form, and identify any and all Dorel employee(s), current or former, whom you believe have so sent or transferred Dorel's Confidential Information.

ANSWER: Defendant objects to Interrogatory No. 3 to the extent it relates to individuals other than DiMartinis on the ground that such information is irrelevant. Defendant further objects to Interrogatory No. 3 on the ground that it is not limited in time. Subject to and without waiving these objections, Defendant answers as follows.

a. "Identify any and all places, other than any Dorel facility, where you know or have reason to believe that any of Dorel's Confidential Information was sent or transferred by any current or former Dorel employee, including you but not limited to you."

I have no knowledge of any of Dorel's "Confidential Information" being sent or transferred by any current or former Dorel employee other than myself.

With regard to myself, this Interrogatory is duplicative of Interrogatory No. 2. *See* Answer to Interrogatory No. 2.

b. "Identify any and all places, other than any Dorel facility ... where any of Dorel's Confidential Information is currently being maintained or stored in any form."

I have no knowledge of any places, other than any Dorel facility, where any of Dorel's Confidential Information is currently being maintained or stored in any form.

With regard to myself, this Interrogatory is duplicative of Interrogatory No. 2. *See* Answer to Interrogatory No. 2.

c. "...identify any and all Dorel employee(s), current or former, whom you believe have so sent or transferred Dorel's Confidential Information."

I have no knowledge of any of Dorel's "Confidential Information" being sent or transferred by any current or former Dorel employee other than myself.

With regard to myself, this Interrogatory is duplicative of Interrogatory No. 2. *See* Answer to Interrogatory No. 2.

4. Identify each and every person affiliated with Summer Infant as a former or current employee with whom you have discussed or communicated about any of Dorel's Confidential Information, and identify any documents memorializing any such communications.

ANSWER: None.

5. Identify each and every person affiliated with Summer Infant as a former or current employee with whom you have discussed or communicated about any current or future Dorel products, plan, design, strategy, licensing arrangement, or marketing initiative, and identify any documents memorializing any such communications.

ANSWER: Defendant objects to Interrogatory No. 5 on the ground that it is duplicative of Interrogatory No. 4. Subject to and without waiving this objection, Defendant answers as follows.

None.

6. Identify each and every person affiliated with Summer Infant as a former or current employee with whom you have discussed any plans, designs, strategy, or marketing, proposed or actual, for any juvenile bath product or related product, and identify any documents memorializing such plans, designs strategy or marketing or such communications.

ANSWER: Defendant objects to Interrogatory No. 6 on the ground that it is not limited in time, is harassing, and requests information unrelated to the matters at issue in this lawsuit. Further, since matters relating to Summer Infant's "plans, designs, strategy, or marketing, proposed or actual, for any juvenile bath product or related product" are by definition confidential, proprietary, and protected from disclosure to Dorel, it appears there is no legitimate basis for posing Interrogatory No. 6 other than an attempt to misuse the discovery process to obtain Summer Infant's confidential and proprietary information.

Subject to and without waiving these objections, Defendant may have been copied on a series of line listings in which juvenile bath products may have been included. To the extent documents exist reflecting such communications, Defendant will produce documents responsive to this Interrogatory pursuant to Fed. R. Civ. P. 33(d). To the extent such documents are determined by counsel to be protected from general disclosure, such documents will be produced pursuant to an Agreed Protective Order.

7. Identify each and every person affiliated with Summer Infant as a former or current employee with whom you have discussed the potential or prospective recruitment or hiring of any Dorel employee, if any, and identify each and every current Dorel employee discussed.

ANSWER: None.

8. Identify each and every person affiliated with Dorel as a current or former employee with whom you have had any communications, written or oral, relating to the subject of your departure from Dorel or your employment with Summer Infant or your potential employment with any other competitor of Dorel.

ANSWER:

a. "Each and every person affiliated with Dorel as a current or former employee with whom you have had any communications, written or oral, relating to the subject of your departure from Dorel."

Defendant objects to this portion of Interrogatory No. 8 on the ground that it is overly broad, and further to the extent it requests information that is in the possession and control of the Plaintiff. Subject to and without waiving this objection, Defendant answers as follows.

All Dorel employees to whom Defendant sent a "goodbye and thank you" email, including executive, lower, and mid-level employees. Plaintiff is in possession of this information.

b. "Each and every person affiliated with Dorel as a current or former employee with whom you have had any communications, written or oral, relating to … your employment with Summer Infant."

Defendant objects to this portion of Interrogatory No. 8 to the extent it requests information that is in the possession and control of the Plaintiff. Subject to and without waiving this objection, Defendant answers as follows.

All Dorel employees to whom Defendant sent a "goodbye and thank you" email, including executive, lower, and mid-level employees. Plaintiff is in possession of this information.

c. "Each and every person affiliated with Dorel as a current or former employee with whom you have had any communications, written or oral, relating to … your potential employment with any other competitor of Dorel."

Defendant objects to this portion of Interrogatory No. 8 to the extent it requests information that is in the possession and control of the Plaintiff. Subject to and without waiving this objection, Defendant answers as follows.

Assuming "any other competitor of Dorel" excludes Summer Infant, none.

9. Identify each and every person affiliated with Dorel as a current or former employee with whom you have had any communication, written or oral, relating to the subject of that employee's actual or potential departure from Dorel or his or her actual or potential employment with Summer Infant or his or her actual or potential employment with any other competitor of Dorel.

ANSWER:

a. "Each and every person affiliated with Dorel as a current or former employee with whom you have had any communication, written or oral, relating to the subject of that employee's actual or potential departure from Dorel."

Defendant objects to this portion of Interrogatory No. 9 on the ground that it is overly broad and seeks information that is irrelevant to the subject of Plaintiff's Complaint. Subject to and without waiving these objections, Defendant answers as follows.

None.

b. "Each and every person affiliated with Dorel as a current or former employee with whom you have had any communications, written or oral, relating to … his or her actual or potential employment with Summer Infant."

I have had communications with Chuck Keegan, a former Dorel and current Summer Infant employee, regarding his actual employment with Summer Infant.

I have had communications with Bill St. Pierre, a former Dorel and current Summer Infant employee, regarding his actual employment with Summer Infant.

I have had communications with Jason Macari, a former Dorel and current Summer Infant employee, regarding his actual employment with Summer Infant.

I have had communications with Steve Gibree, a former Dorel and current Summer Infant employee, regarding his actual employment with Summer Infant.

c. "Each and every person affiliated with Dorel as a current or former employee with whom you have had any communications, written or oral, relating to … his or her actual or potential employment with any other competitor of Dorel."

Defendant objects to this portion of Interrogatory No. 9 to the extent it is overly broad and seeks information irrelevant to the subject of Plaintiff's Complaint.

Subject to and without waiving these objections, Defendant answers as follows.

Assuming "any other competitor of Dorel" excludes Summer Infant, none.

10. State whether any agent of yours has taken or received any statement, either orally or in writing, from any person who has any information or knowledge relating to the allegations of the Complaint. If so, identify each such person and communication, as defined above.

ANSWER: Defendant objects to Interrogatory No. 10 to the extent it seeks disclosure of communications protected by the attorney-client and/or work-product privileges. Subject to and without waiving this objection, Defendant answers as follows.

None.

11. Identify each and every person whom you intend or expect to call as a witness on your behalf at the trial on this action. For each person identified, describe the subject on which he or she is expected to testify.

ANSWER: Defendant objects to Interrogatory No. 11 on the ground that it is premature. Defendant will disclose proposed witnesses in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Indiana, and any pre-trial rulings issued by the Court.

Date: September 20, 2006

Respectfully submitted,

Lois DiMartinis

By: ______________________
One of Her Attorneys

James G. Richmond (IN Atty. No. 5968-45)
Abigail A. Clapp (IN Atty. No. 25444-45)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Tel. (312) 456-8400
Fax (312) 456-8435

J. Lee McNeely
MCNEELY STEPHENSON THOPY & HARROLD
30 East Washington Street,
Suite 400
PO Box 457
Shelbyville, IN 46176-1372
Tel. (317) 392-3619
Fax (317) 835-7777

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of September 2006, a true and correct copy of the foregoing *Defendant Lois DiMartinis' Answers to Plaintiff's First Set of Interrogatories* was sent via United States Mail, postage prepaid, for service upon the following:

Charles H. R. Peters
Brenna M. Woodley
Nora Kersten Walsh
Lee Ann Rabe
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606

Jay Gordon Taylor
Ice Miller LLP
One American Square
Suite 3100
Indianapolis, IN 46282