UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DOREL JUVENILE GROUP, INC.,          :
                                     :
         v.                          :          MC 06-91 S
                                     :
SUMMER INFANT, INC.                  :

**MEMORANDUM OF DECISION
RE EMERGENCY MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

     This miscellaneous matter came before the Court on October
6, 2006, for a hearing on Plaintiff's Emergency Motion to Compel
Production of Documents from Summer Infant, Inc. (Document
("Doc.") #1) (the "Motion").  On October 10, 2006, the Court
issued a decision regarding the Motion, see Decision Re Emergency
Motion to Compel Production of Documents (Doc. #8) ("Decision"),
and stated that a memorandum explaining the rulings contained
therein would be issued later, see id. at 1.  This is that
memorandum.

**Background**

     Dorel Juvenile Group, Inc. ("Dorel"), is the plaintiff in an
action pending in the United States District Court for the
Southern District of Indiana which is captioned Dorel Juvenile
Group, Inc. v. Lois DiMartinis, Case No. 1:06-cv-1295-DFH-TAB
(the "Indiana action").  See Motion, Exhibit ("Ex.") A (Complaint
for Injunctive Relief and Money Damages).  In that action, Dorel
seeks to enjoin Lois DiMartinis ("DiMartinis"), its former
Director of Marketing Communications, from using or disclosing
Dorel's confidential information and trade secrets and performing
services at her new employer, Summer Infant, Inc. ("Summer
Infant"), a direct competitor, "in any capacity that would cause
her to inevitably disclose such confidential information and

trade secrets,"[1] Motion at 2.  Summer Infant is not a party to
the Indiana action.

On September 6, 2006, Dorel served a subpoena and document
rider ("Subpoena") on Summer Infant, seeking production of the
documents that are the subject of the instant Motion.[2]  See
Motion at 4; see also id., Ex. C (Subpoena and Rider).  Summer
Infant responded to the Subpoena by letter on September 18, 2006,
objecting to all of the document requests to the extent that they
seek confidential and/or proprietary information and documents
protected by attorney-client, work product, or other privilege or
immunity.  See Motion, Ex. D (Letter from O'Connor to Walsh of
9/18/06) at 2-5.  Summer Infant also objected on the ground that
the document requests were vague in both time and scope, that
they lacked specificity, and that they placed an undue burden on
Summer Infant.  Id.  Apart from these objections, Summer Infant
advised that it would "make non-confidential and non-proprietary
documents, as well as non-privileged documents, that are
responsive and within its possession, custody or control
available for inspection and copying at a mutually convenient
date and time."  Id. at 5.

Further communications between counsel for Dorel and Summer
Infant failed to resolve the differences regarding what documents
are to be produced.  See Motion at 5-6; see also Defendant's
Objection to Plaintiff's Emergency Motion to Compel Production of

---

[1] DiMartinis resigned from Dorel's employment on August 7, 2006,
to become Vice President of Marketing for Summer Infant.  See
Plaintiff's Emergency Motion to Compel Production of Documents from
Summer Infant, Inc. (Document ("Doc.") #1) (the "Motion"), Ex. A ¶¶ 1,
3.

[2] The Subpoena was issued pursuant to an order entered in the
Indiana action authorizing expedited discovery as to both parties and
non-parties.  See Motion, Ex. B (Order on Expedited Discovery).  A
hearing on Dorel's request for a preliminary injunction in the Indiana
action has been scheduled for October 16, 2006.  See Motion at 4.

Documents (Doc. #6) ("Summer Infant's Objection") at 3-4,
Attachment ("Att.") (Letter from O'Connor to Peters and Walsh of
9/29/06).  Dorel filed the instant Motion on September 29, 2006,
and Summer Infant's Objection was filed on October 5, 2006.

**Law**

The disclosure of confidential information by a non-party is
governed by Fed. R. Civ. P. 45(c)(3)(B)(i).  See Insulate America
v. Masco Corp., 227 F.R.D. 427, 431 (W.D.N.C. 2005).

> If a subpoena requires disclosure of a trade secret or
> other confidential research, development or commercial
> information, ... the court may, to protect a person
> subject to or affected by the subpoena, quash or modify
> the subpoena, or if the party in whose behalf the
> subpoena is issued shows a substantial need for the
> testimony or material that cannot be otherwise met
> without undue hardship and assures that the person to
> whom the subpoena is addressed will be reasonably
> compensated, the court may order appearance or production
> only upon specified conditions.

Id. (quoting Fed. R. Civ. P. 45(c)(3)(B)(i))(alteration in
original).

In deciding whether to quash or modify a subpoena which
seeks a trade secret or other confidential research or
development or commercial information, "a court must evaluate all
the circumstances and balance, inter alia, the requesting party's
need for the information and the potential prejudice imposed on
the requested party."  Id. at 432 (citing Truswal Sys. Corp. v.
Hydro-Air Eng'g, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987));
accord Plant Genetic Sys., N.V. v. Northrup King Co., 6 F.Supp.2d
859, 861 (E.D. Mo. 1998)("[T]he factors required to be balanced
by the trial court in determining the propriety of a subpoena are
the relevance of the discovery sought, the requesting party's
need, and the potential hardship to the party subject to the
subpoena.")(quoting Heat & Control, Inc., v. Hester Indus., Inc.,
785 F.2d 1017, 1024 (Fed. Cir. 1986))(alteration in original).

"In assessing the burden of complying with a subpoena, a court may consider as one factor that a deponent is not a party." Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc., 813 F.2d at 1210.

A non-party may seek from the court protection from discovery by the overlapping and interrelated provisions of Rules 26 and 45 of the Federal Rules of Civil Procedure. Insulate America v. Masco Corp., 227 F.R.D. at 432.

> A non-party moving to quash a subpoena is in the same position as a party moving for a protective order that such discovery not be allowed. The court hearing the motion is required to apply the balancing standards: relevance, need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit.

Insulate America v. Masco Corp., 227 F.R.D. at 432.   The burden is on the movant to establish that the subpoena duces tecum should be quashed.   Id.  At the same time, "where a subpoena requires disclosure of a trade secret or other confidential or commercially sensitive information it 'should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the' party opposing such potentially harmful disclosure."   Id. (quoting Anderson, Greenwood & Co. v. Nibsco Supply, Inc., No. 96-MC-15-E, 1996 WL 377205, at *2 (W.D.N.Y. June 27, 1996)(quoting Fed. R. Civ. P. 45, Advisory Committee Notes, 1991 Amendment))(italics eliminated).

"Local courts whose only connection with a case is the supervision of the taking of depositions ancillary to an action elsewhere should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder."   Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 425 (1st Cir. 1961)(referring to prior version of Rule 26); see also Insulate America v. Masco

4

Corp., 227 F.R.D. at 432 ("Insomuch as courts reviewing ancillary
discovery matters are frequently not familiar with the main
action, they should be permissive where there is doubt whether
the requested discovery can lead to the discovery of admissible
evidence.")(quoting Anderson, Greenwood & Co. v. Nibsco Supply,
Inc., 1996 WL 377205, at *2); Plant Genetic Sys. v. Northrup King
Co., 6 F.Supp.2d at 861 ("A district court whose only connection
with a case is supervision of discovery ancillary to an action in
another district should be especially hesitant to pass judgment
on what constitutes relevant evidence thereunder.")(quoting
Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc., 813 F.2d at 1211-
12)(internal punctuation and citation omitted)).

### Discussion

Pursuant to Request No. 1 of the Subpoena, see Motion, Ex. C,
Dorel seeks "all information in Summer Infant's possession
relating to Dorel, including Dorel's marketing, sales,
advertising, and product promotions, product development
information, licensing arrangements, financial information and
crisis management information," Motion at 6-7.  Dorel seeks all
information that Summer Infant may possess regarding it and does
not limit the information to that which may in some manner be
attributable to DiMartinis.[3]  See id. at 7; see also Summer
Infant's Objection at 4 ("Dorel now seeks all information that
Summer Infant may possess regarding Dorel, regardless of the
source or form of the information.").  Dorel agues it needs all
of the information because:

> It relates directly to the issue of whether [Di]Martinis
> is reasonably likely to use Dorel's information at Summer
> Infant.   DiMartinis had access to virtually all of

---

[3] Summer Infant has advised Dorel that it has no documents
pertaining to Dorel which were obtained from DiMartinis.  See
Defendant's Objection to Plaintiff's Emergency Motion to Compel
Production of Documents ("Summer Infant's Objection") at 4.

> Dorel's marketing information.  The likelihood that she
> will use any of that information while at Summer Infant
> depends, in part, on the extent to which Summer Infant
> even considers Dorel's products or promotions when it
> develops its own marketing and product development plans.
> To the extent it consciously considers that information,
> there is an increased motive and intent to use the Dorel
> information DiMartinis possesses.  If it never considers
> Dorel, there is arguably less motive and intent to use
> it.  But in order to explore that issue, Summer Infant's
> information about Dorel must be produced.

Motion at 7.

The Court is not entirely persuaded by this argument as to Dorel's need for all of the information sought by Request No. 1 or as to its relevance.  On the other hand, the Court does not find that Summer Infant will suffer significant prejudice by being required to produce information that pertains to Dorel and not to itself.  Bearing in mind the admonition that a court reviewing ancillary discovery matters should be permissive where there is doubt whether the requested discovery can lead to discovery of admissible evidence, see Insulate America v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005), the Motion is granted as to Request No. 1 with the following limitation.  If there is a document which contains information about both Dorel and Summer Infant, Summer Infant may redact the information which pertains to Summer Infant.[4]

Request No. 2, which seeks production of all documents relating to or reflecting any communication with DiMartinis regarding any of Dorel's information at any time, requires little discussion.  Dorel's need for this information is substantial. Dorel has an obvious and legitimate interest in knowing what information Summer Infant may have acquired from DiMartinis.

---

[4] For example, if Summer Infant has a chart which shows a side by side comparison of Dorel's sales and Summer Infant's sales, the chart must be produced, but the information about Summer Infant may be redacted.

6

Requiring Summer Infant to produce this information would not appear to be particularly burdensome, nor does it seem that any prejudice or harm would result to Summer Infant.  Accordingly, the Motion is granted as to Request No. 2.

Similarly, Dorel's need for the information sought by Request Nos. 3 (documents relating to Summer Infant's recruitment of DiMartinis) and 4 (documents reflecting communications between Summer Infant and DiMartinis at any time) is also apparent.[5] Again, the Court does not find that Summer Infant will be unduly burdened by being required to produce these documents, nor does it appear that Summer Infant will suffer any significant prejudice or harm by doing so.  Accordingly, the Motion is granted as to Request Nos. 3 and 4 with the following limitation. To the extent that Summer Infant contends that notes taken by any person at the August 18, 2006, meeting at Summer Infant which DiMartinis attended[6] would disclose confidential information which is not relevant to the action between Dorel and DiMartinis, Summer Infant may submit such notes to this Court for in camera review.

Request Nos. 5, 6, 7, and 8 seek documents relating to four former employees of Dorel who now are employed by Summer Infant. Request No. 13 seeks documents relating to communications between Summer Infant and any employee of Dorel, past or current,

---

[5] There is some overlap in Dorel's thirteen document requests. Rather than attempt to eliminate the duplication, the Court rules upon each individual request.  However, Summer Infant in complying with the Decision Re Emergency Motion to Compel Production of Documents (Doc. #8) ("Decision") may respond, where appropriate, that all documents responsive to a particular request have been produced pursuant to an earlier numbered request.

[6] In her answers to Dorel's interrogatories in the Indiana action, DiMartinis stated that she attended "a strategy session on August 18, 2006[,] at Summer Infant ...."  Motion, Ex. H (Defendant Lois DiMartinis' Answers to Plaintiff's First Set of Interrogatories) at 3.

relative to the employee's possible or actual departure from
Dorel and possible employment by Summer Infant.  The relevance of
this information and Dorel's need for it in the Indiana action
are questionable.  The information sought predates DiMartinis'
departure from Dorel.  Additionally, the Court is cognizant of
the legitimate privacy concerns of the four individuals involved.
There is also some burden on Summer Infant in having to locate
the responsive documents.  On the other hand, the fact that
DiMartinis is the fifth employee since January 2005 to be hired
by Summer Infant, see Motion at 3, does seem somewhat unusual,
cf. PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1271 (7th Cir. 1995)
(affirming issuance of preliminary injunction enjoining
manufacturer's former high level manager from working for
competitor on an inevitable disclosure theory and noting district
court's finding that competitor "seemed to express an unnatural
interest in hiring [the manufacturer's] employees").  That fact,
coupled with the admonition that a court reviewing ancillary
discovery matters should be permissive, see Insulate America v.
Masco Corp., 227 F.R.D. at 432, causes the Court to come down on
the side of granting these requests.

     Accordingly, the Motion is granted as to Request Nos. 5, 6,
7, 8, and 13 to the extent that Summer Infant shall produce all
documents reflecting any communication between Summer Infant and
past or present employees of Dorel relating to the subject of
their departure (or potential departure) from Dorel and their
hiring (or potential hiring) by Summer Infant and to the subject
of DiMartinis' departure from Dorel or employment with Summer
Infant.  To the extent that Request Nos. 5, 6, 7, 8, and 13 seek
documents pertaining to what former employees of Dorel (other
than DiMartinis) have done at Summer Infant since their hiring,
the Motion is denied.  The Court finds that the relevance and
Dorel's need for the information are outweighed by the burden and

prejudice to Summer Infant in having to produce such a large number of documents[7] and to disclose confidential commercial information.  The Court also finds that it would be a further intrusion into the privacy of the four individuals who are not parties to the Indiana action.

Request No. 9 seeks any and all documents relating to DiMartinis' current position with Summer Infant, including documents reflecting her job title, duties, and responsibilities. Summer Infant has advised Dorel's counsel that "the position that Ms. [Di]Martinis was hired for is a newly created position. There is no formal job description other than what is contained in the advertisement.  Some of the responsibilities of this position were performed by various staff; however, there are no official job descriptions for those employees."  Motion, Ex. G (Letter from O'Connor to Peters and Walsh of 9/27/06) at 1.   The Court shares Dorel's skepticism on this issue.[8]  Accordingly, the Motion is granted.  If Summer Infant's response to this request

---

[7] The Court bases its conclusion that production would involve a large number of documents on the fact that the four employees have been working at Summer Infant for a significant period of time and that their activities would be reflected in a large number of documents.  This is in contrast to the situation with DiMartinis whose employment commenced only recently.

[8] Dorel argues:

It simply is incredible that Summer Infant would create a new Vice President position without creating a single email, note, memo, or other internal document discussing what this new position would entail and/or why it was being created.  It is also hard to believe that aside from the newspaper advertisement, there are no notes or other documents reflecting communications between DiMartinis and Summer Infant, particularly since DiMartinis indicated in her Answers to Dorel's First Set of Interrogatories that she had numerous contacts with the principals of Summer Infant regarding the position between April and August 2006. (Ex. H, No. 1).

Motion at 10.

is that the only responsive document is the newspaper advertisement for the position, Summer Infant shall submit an affidavit from a knowledgeable officer stating that s/he has directed a thorough search for documents responsive to this request and that no additional documents exist.

Request No. 10 seeks all documents relating to the current position, title, duties, and responsibilities of four Summer Infant employees. While the Court has already determined that documents pertaining to what former employees of Dorel (other than DiMartinis) have done at Summer Infant since their hiring need not be produced, see Discussion supra at 8-9, the Court understood Dorel's counsel to state at the October 6, 2006, hearing that some of the duties formerly performed by these employees will be performed by DiMartinis in the future. As to Request No. 10, the Motion is granted to the extent that any duty or responsibility formerly performed by or assigned to any of Summer Infant's employees listed in Request No. 10 is to be performed by DiMartinis.[9]  In all other respects, the Motion is denied as to Request No. 10 for the same reasons that Request Nos. 5, 6, 7, 8, and 13 were denied in part, see Discussion supra at 8-9.

Lastly, Request Nos. 11 and 12 seek information regarding Summer Infant's design information for two product areas in which Dorel contends that recent innovations and developments were achieved through unlawful access to Dorel's confidential design information--Summer Infant's juvenile aspirator and bath products. According to Dorel:

> Dorel is highly concerned about the timing and content of
> certain innovations to these products by Summer Infant

---

[9] Thus, to the extent that duties to be performed by DiMartinis are reflected in documents pertaining to these four employees, those documents must be produced. However, duties which will not be performed by DiMartinis may be redacted from the documents.

> which coincided with certain of Dorel's employees
> commencing work at Summer Infant.  The extent of Summer
> Infant's previous attempts to use Dorel's confidential
> information obtained from former Dorel employees helps
> establish Summer Infant's motive and intent to use
> similar information that DiMartinis possesses.  If, as
> Dorel believes, Summer Infant's designs and innovations
> were based in part or in whole on Dorel's research and
> design information, there is an increased threat that
> DiMartinis will, in fact, disclose Dorel's plans in
> carrying out her duties on behalf of Summer Infant.  That
> threat is directly relevant to the need for injunctive
> relief.

Motion at 12.  Summer Infant objects to producing responsive
documents on the ground that the information sought is
confidential and proprietary which is "in no way connected to the
hiring of Ms. DiMartinis."  Id., Ex. E (Letter from O'Connor to
Walsh of 9/22/06) at 2.  It appears undisputed that the
innovations to the products occurred while DiMartinis was still
employed by Dorel, and there is no reason to believe that she
played any role in them.

The Court finds Dorel's argument as to why it needs the
information sought by Request Nos. 11 and 12 to be only
marginally persuasive.  Of greater concern, the Court is unable
to dismiss as unfounded Summer Infant's complaint that Dorel is
using the dispute with DiMartinis as a "pretext," Motion, Ex. D
at 1, for attempting to obtain confidential and proprietary
information from Summer Infant, cf. Insulate America v. Masco
Corp., 227 F.R.D. 427, 434 (W.D.N.C. 2005)("In deciding whether a
request comes within the discovery rules, the court is not
required to blind itself to the purpose for which a party seeks
information.")(quoting Oppenheimer Fund, Inc. v. Sanders, 437
U.S. 340, 353, 98 S.Ct. 2380, 2390 (1978)).  The information
sought by Request Nos. 11 and 12 is clearly confidential and
proprietary.  Summer Infant argues that to obtain such
information "[t]here must be some showing of a good faith basis

11

for requesting and obtaining the information, and not just
unattested and unverified allegations by attorneys hired by
Plaintiff." Summer Infant's Objection at 4. At least as to the
highly confidential and proprietary information sought by Request
Nos. 11 and 12, the Court is inclined to agree.

    In contrast to the circumstances relative to Request No. 1
(where the Court granted the request despite doubts as to Dorel's
need for the information and its relevance), here there is the
potential for great prejudice to Summer Infant. Dorel is a
direct competitor. See Motion at 1-2. Although Dorel contends
that the existence of a protective order negates any prejudice,
Motion at 12, the Court notes that under the Agreed Protective
Order, see Motion, Ex. F (Agreed Protective Order), confidential
information marked "Attorneys Eyes Only" may be disclosed not
only to Dorel's outside counsel but also to Dorel's in-house
counsel, see id. ¶ 4(c); cf. Excellus Health Plan v. Tran, 222
F.R.D. 72, 74 (W.D.N.Y. 2004)(finding that confidentiality
concerns were appropriately and adequately addressed where the
court's protective order prohibited documents stamped
"Confidential--Counsel Only") from being shown to any
employee of any party, including in-house counsel). Moreover,

    [t]here is a constant danger inherent in disclosure of
    confidential information pursuant to a Protective Order.
    Therefore, the party requesting disclosure must make a
    strong showing of need, especially when confidential
    information sought from a non-party is sought.

Insulate America v. Masco Corp., 227 F.R.D. at 434.

    Producing the documents requested would also appear to
impose a substantial burden on Summer Infant. Production of
"[a]ny and all documents relating to or reflecting product
development and/or design information for any juvenile nasal
aspirator ...," Motion, Ex. C, Request No. 11, or "for any
juvenile bath product or related product ...," id., Request No.

12

12, would likely require Summer Infant to search through a large volume of records and spend a considerable period of time assembling responsive documents.

In sum, while this Court is mindful of its role in reviewing ancillary discovery matters, see Insulate America v. Masco Corp., 227 F.R.D. at 432, and that it should be hesitant to pass judgment on what constitutes relevant evidence, see Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 425 (1st Cir. 1961), after evaluating all the circumstances and balancing the necessary considerations, see Insulate America v. Masco Corp., 227 F.R.D. at 432, the Court concludes that the scales tip strongly against granting the Motion as to Request Nos. 11 and 12.  Accordingly, as to Request Nos. 11 and 12 the Motion is denied.

Because the hearing on Dorel's application for a preliminary injunction in the Indiana action is scheduled for October 16, 2006, there is a need for compliance on an expedited basis. Accordingly, to the extent the Court has granted the Motion, Summer Infant shall produce the responsive documents as soon as possible but not later than Friday, October 13, 2006.

ENTER:

DAVID L. MARTIN
United States Magistrate Judge
October 11, 2006

BY ORDER,

Deputy Clerk

13